**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

**UNITED STATES OF AMERICA, ex rel. FCA WB VENTURE, LLC PROTECTED SERIES 521.2 MEMBER,**

**Plaintiffs,**

**-against-**

**PERFECT SMILE BRACES, P.C, AND EMIL MARK BAILEY, D.D.S.,**

**Defendants.**

-------------------------------------------------------------------X

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Index No.**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Plaintiff-Relator FCA WB Venture, LLC Protected Series 521.2 Member ( "Relator"), by attorney, Timothy J. McInnis, Esq., complaining of the defendants, respectfully alleges as follows:

## NATURE AND OVERVIEW OF ACTION

1. Relator brings certain claims in this civil action on his own behalf and on behalf of the United States of America ("United States") under *the qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA" or "Act"), against Perfect Smile Braces, P.C. ("PSB") and Emil Mark Bailey, D.D.S., ("Bailey"), (collectively, "Defendants"), which claims seek treble damages, civil penalties, and other relief arising from Defendants' submission of false and fraudulent claims and statements to New York State's Medicaid program, (the "*Qui Tam* Claims").

2. Specifically, Defendants hired and used unlicensed dental assistants to perform intraoral healthcare services on orthodontal patients who were Medicaid beneficiaries.

3. Defendants' use of unlicensed dental assistants to perform intraoral healthcare services violated provisions of the New York State Education Law.

4. Each claim Defendants submitted to the Medicaid program for reimbursement was constructively appended to a signed and notarized certification statement attesting that "the persons providing services, care and supplies have the necessary licensing, certification, training and experience to perform the claimed services," and also that Defendants "have furnished or caused to be furnished the care, services, and supplies itemized … in accordance with applicable federal and state laws and regulations."

5. The certification statements associated with Defendants' claims submitted to the Medicaid program where unlicensed dental assistants provided intraoral healthcare services were materially false and thereby violated § 3739(a)(1)(A) of the FCA.

6. As a result of the above-described violation of the FCA, the United States, State of New York, and City of New York suffered economic losses, the precise amount of which will be determined at trial.

7. Relator also brings a whistleblower retaliation claim in this action on his own behalf under § 3730(h) of the FCA (the "Retaliation Claim").

8. Defendants wrongfully terminated Relator's employment after he raised issues with, and objections to, Defendants' use of unlicensed dental assistants to perform proscribed services on Medicaid patients.

9. Relator has suffered economic losses and other damages and injuries as a result of his wrongful termination, in an amount to be determined at trial.

**JURISDICTION AND VENUE**

10. This Court has original subject matter jurisdiction over the FCA *qui tam* claims alleged in this Complaint under 28 U.S.C. § 1331 (federal question) and 31 U.S.C. § 3732(a) (False Claims Act).

11. This Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because Defendants can be found, reside, or transact business in this district. Section 3732(a) of the FCA further provides for service of process at any place within or outside the United States.

12. Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because Defendants can be found, reside, and transact business in this district; acts proscribed by 31 U.S.C. § 3729 occurred within this district; and a substantial part of the events or omissions giving rise to the *qui tam* claims alleged in this Complaint occurred in this district.

**FCA SUBJECT MATTER JURISDICTION**

13. Relator brings this *qui tam* action pursuant to 31 U.S.C. 3730(b).

14. Upon information and belief, none of the subject matter or other jurisdictional bars, preclusions, restrictions, or limitations set forth in Section 3730 of the FCA is applicable to this action.

**FCA'S STATUTE OF LIMITATIONS**

15. A *qui tam* claim under section 3730(b) of the FCA may not be brought (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the

circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last. 31 U.S.C. § 3731(b).

## PARTIES, ENTITIES AND PERSONS

16. The United States is the real party in interest in the Qui Tam Claims in this action.

17. The United States, together with the State of New York and the City of New York, jointly fund the New York State Medical Assistance Program ("NYS Medicaid"), and the State of New York responsible for administering the program, which it does through the New York State Department of Health ("NYS DOH").

18. The United States oversees NYS Medicaid through the United States Department of Health and Human Services ("HHS"). HHS is located at 200 Independence Avenue, SW, Washington, DC 20201.

19. Within HHS, the Centers for Medicare and Medicaid Services ("CMS") administers and funds Medicaid programs.

20. CMS is located at 7500 Security Boulevard, Baltimore, Maryland, 21244-1850. HHS also maintains a Northeastern Field Office at 26 Federal Plaza, Room 41-122, New York, New York, 10278.

21. NYS DOH administers the NYS Medicaid through its Office of Health Insurance Programs, which is located at Corning Tower, Empire State Plaza, Albany, NY 12237. NYS Medicaid healthcare reimbursement claims are processed through the New York State Medicaid Management Information System ("MMIS"), currently also referred to as "eMedNY."

22. Computer Sciences Corporation ("CSC") is a private internet technology contractor that, on behalf of NYS DOH, processes NYS Medicaid claims submitted to MMIS/eMedNY by healthcare providers in New York State. CSC processes New York Medicaid claims at offices located at 327 Columbia Turnpike Rensselaer, New York 12144.

23. Relator is the sole member of FCA WB Venture, LLC, Protected Series 521.2, a Delaware limited liability corporation. He is a natural person and provided his identity to representatives of the U.S. Attorney's Office for the Southern District of New York prior to commencing this action. Relator is a former employee of Defendants and has knowledge of the factual allegations in this complaint through, among other things, observations he made, and conversations he had, during his employment with Defendants.

24. Defendant PSB is an active New York professional corporation. Its executive office is located at 555 E. Fordham, Rd., Bronx, NY 10458. PSB provides orthodontal healthcare services to various types of patients, including Medicaid beneficiaries, from whom PSB receives millions of dollars in revenue annually. PSB currently employs three orthodontal dentists, including Defendant Bailey, and approximately a dozen dental assistants, none of whom is, or has ever been, licensed by the State of New York as a certified dental assistant. PSB provides healthcare services using unlicensed dental assistants to Medicaid beneficiaries at the following three locations: 555 E. Fordham Rd., Bronx, NY 10458; 468 E. Fordham Rd., Bronx, NY 10458; and 192 Dyckman St., New York, NY 10040. PSB's NPI number is 1841689205.

25. Defendant Bailey resides in New York, NY and is a New York State licensed Doctor of Medicine in Dentistry ("DMD"), specializing in orthodontics and dentofacial orthopedics. Bailey's individual NPI number is 1790041523, his group NPI for PSB is

1902157910, his Medicaid Program number is 03437749, and his NY dental license number is 055755. Bailey owns, controls and operates PSB, which he founded in 2012. Bailey also is associated with two Florida limited liability corporations, PSB Holdco, LLC and PSB Management, LLC, and he owns a condominium in Miami Beach. FL.

**LIABILITY, DAMAGES, AND AWARDS UNDER THE FCA**

26. The FCA imposes civil liability on "any person" who, among other things:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

31 U.S.C. § 3729(a)(1)(A).

27. Section 3729(b)(1) of the Act defines the terms "knowing" and "knowingly" to

> (A) mean that a person, with respect to information—
>
> (i) has actual knowledge of the information;
>
> (ii) acts in deliberate ignorance of the truth or falsity of the information; or
>
> (iii) acts in reckless disregard of the truth or falsity of the information; and
>
> (B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

28. Section 3729(b)(2) of the Act defines "claim" to mean any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or

property requested or demanded, or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. 31 U.S.C. § 3729(b)(2)(A) (as amended May 20, 2009; the prior version is materially identical for purposes of this action).

29. Section 3729(b)(4) of the Act defines the term "material" to mean having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

30. Section 3729(a) of the Act provides that any person who knowingly violates the FCA is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461, Public Law 104-410), which currently sets the minimum penalty at $13,508 and the maximum penalty at $27,018, plus three times the amount of damages the Government sustains because of an act of that person.

31. Section 3730(d) of the Act provides that where the Government intervenes in and proceeds with an action commenced by the filing of a *qui tam* complaint pursuant to 31 U.S.C. § 3730(b), and recovers money or property from a defendant under Section 3729, the person who initiated the action (known as the "relator"), shall receive between fifteen percent (15%) and twenty-five percent (25%) of the proceeds, subject to certain exceptions and limitations, none of which applies here.

32. Where the Government does not intervene in the *qui tam* action and the relator pursues it without the Government's involvement and recovers proceeds from a defendant under Section 3729, the relator, again, subject to certain exceptions and limitations that do not apply

here, shall receive between twenty-five percent (25%) and thirty percent (30 %) of the proceeds. 31 U.S.C. § 3730(b).

33. Whether the Government intervenes in the matter or not, the relator in a successful *qui tam* action is also entitled to an award against the defendant for the amount of all reasonable expenses, attorneys' fees, and costs incurred in pursuing the *qui tam* claims. *Id*.

**Anti-Retaliation Provisions**

34. The FCA provides, in part:

> (1) In general.—
> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.
>
> (2) Relief.—
> Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h).

**MEDICAID STATUTES AND REGULATIONS**

**Generally**

35. Medicaid, enacted in 1965 under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq., is a medical assistance program for indigent and other needy people that is financed by joint federal and state/local funding and is administered by the states according to

federal regulations, oversight, and enforcement. Each state implements its version of Medicaid according to a State Plan that has been approved by the United States Department of Health and Human Services ("HHS") and is overseen by the federal Centers for Medicare and Medicaid Services ("CMS").

36. Within broad federal regulatory and policy guidelines (see 42 C.F.R. § 430 et seq., and CMS publications), the states determine who is Medicaid-eligible, what services are covered, and how much to reimburse healthcare providers. The states, through intermediaries, also receive healthcare provider claims for program reimbursements, evaluate those claims, make payments to the healthcare providers, and present the claims to HHS/CMS for reimbursement of the federal government's share.

37. NYS Medicaid was established in 1966. Act of Apr. 30, 1966, ch. 256, 1966 N.Y. Laws 844. By statute, NYS DOH administers this program at the state level. N.Y. Pub. Health Law § 201(1)(v).

**NYS Medicaid Regulations**

38. Providers who submit claims to NYS Medicaid must certify, among other things, that all statements in the claim made are true, accurate and complete to the best of the provider's knowledge; that no material fact has been omitted; that the provider is bound by all rules, regulations, policies, standards, fee codes and procedures of the NYS DOH as set forth in Title 18 of the Official Compilation of Codes, Rules and Regulations of New York State and other publications of the Department, including Provider Manuals and other official bulletins of the Department; and that the certifications are true. See New York State Medicaid Program: Information For All Providers—General Billing (current version at https://www.

emedny.org/ProviderManuals/AllProviders/PDFS/archive/Information_for_All_Providers-General_Billing-2004-01.pdf).

39. 18 N.Y.C.R.R § 504.3 states that by enrolling in the Medicaid program, a provider agrees among other things to prepare and maintain contemporaneous records demonstrating its right to reimbursement; maintain records of services furnished and claims for payment for a period of six years; and submit claims for payment only for services that are actually rendered, medically necessary or otherwise authorized by the Social Services Law, and are furnished to eligible individuals. Providers further agree that information provided in relation to claims for payment is true and that the provider complies with the rules, regulations and official directives of the department.

40. As a condition of payment by NYS Medicaid, every participant and beneficiary in the Medicaid program is subject to 18 NYCRR § 515.5, which makes compliance with all conditions of participation in the program a condition of payment for any good or service furnished under the program. That provision provides, in pertinent part: "(a) No payments will be made to or on behalf of any person for the medical care, services or supplies furnished . . . in violation of any condition of participation in the program . . . . (b) No payment will be made . . . for any medical care, services or supplies ordered or prescribed in violation of any condition of participation in the program." 18 NYCRR 515.5.

**Submission of Dental Provider Claims to Medicaid**

41. Dental healthcare providers submit their claims to NYS Medicaid in electronic or paper formats (except for dental clinics, which must use electronic claims only).

42. Dental healthcare providers who choose to submit their Medicaid claims electronically are required to use the HIPAA 837 Dental ("837D") transaction and submit their claims to eMedNY system via ePACES, a HIPAA-compliant web-based application that is customized for specific transactions, including the 837D.

43. Dental healthcare providers who choose to submit their claims on paper forms must use the New York State eMedNY-000201 claim form ("Claim Form A").

44. Regardless of which manner of claim submission they use, dental healthcare providers are required to submit an Electronic/Paper Transmitter Identification Number ("ETIN") Application and a signed and notarized Certification Statement for Providers Billing Medicaid ("Certification Statement") before submitting claims to NYS Medicaid.

45. By signing the Certification Statement, the provider attests to and certifies, among other things:

> I am (or the business entity named in this form of which I am a partner, officer, or director is) a qualified provider enrolled with and authorized to participate in the New York State Medical Assistance Program and in the profession or specialties, if any, required in connection with this claim; *the persons providing services, care and supplies have the necessary licensing, certification, training and experience to perform the claimed services;* I have reviewed these claims; *I (or the entity) have furnished or caused to be furnished the care, services, and supplies itemized and done so in accordance with applicable federal and state laws and regulations;* I have read the eMedNY Provider Manual and all revisions thereto; all claims are made in full compliance with the pertinent provisions of the Manual and revisions; all claims for care, services and supplies provided at the order of another professional have to the best of my knowledge been ordered by that professional in bona fide compliance with the procedures set forth in the manual and revisions. All care, services and supplies for which claim is made are medically necessary for the treatment of the named recipient, the amounts listed are due and, except as noted, no part thereof has been paid by, or to the best of my knowledge is payable from any other source other than the Medical Assistance Program; payment of fees made in accordance with established schedules is accepted as payment in full; other than

a claim rejected or denied or one for adjustment, no previous claim for the care, services and supplies itemized has been submitted or paid; *ALL STATEMENTS, DATA AND INFORMATION TRANSMITTED ARE TRUE, ACCURATE AND COMPLETE TO THE BEST OF MY KNOWLEDGE; NO MATERIAL FACT HAS BEEN OMITTED*; I UNDERSTAND THAT PAYMENT AND SATISFACTION OF THIS CLAIM WILL BE FROM FEDERAL, STATE AND LOCAL PUBLIC FUNDS AND THAT I MAY BE FINED AND/OR PROSECUTED UNDER APPLICABLE FEDERAL AND STATE LAWS FOR ANY VIOLATION OF THE TERMS OF THIS CERTIFICATION, INCLUDING BUT NOT LIMITED TO FALSE CLAIMS, STATEMENTS OR DOCUMENTS, OR CONCEALMENT OF A MATERIAL FACT [upper case in original]; taxes from which the State is exempt are excluded; all records pertaining to the care, services and supplies provided including all records which are necessary to disclose fully the extent of care, services and supplies provided to individuals under the New York State Medical Assistance Program will be kept for a period of six years from the date of payment, and such records and information regarding these claims and payment therefor shall be promptly furnished upon request to the local Department of Social Services, the State Department of Health, the Office of the Medicaid Inspector General, the State Medicaid Fraud Control Unit or the Secretary of the Department of Health and Human Services; there has been compliance with the Federal Civil Rights Act of 1964 and with section 504 of the Federal Rehabilitation Act of 1973, as amended, which forbid discrimination on the basis of race, color, national origin, handicap, age, sex and religion; I agree (or the entity agrees) to comply with the requirement of 42 CFR Part 455 relating to disclosures by providers; the State of New York through its fiscal agent or otherwise is hereby authorized to (1) make administrative corrections to claims submitted under this agreement to enable its automated processing, subject to reversal by the provider, and (2) accept the claim under this agreement as original evidence of care, services and supplies furnished.

In submitting claims under this agreement I understand and agree that I (or the entity) shall be subject to and bound by all rules, regulations, policies, standards, fee codes and procedures of the New York State Department of Health and the Office of the Medicaid Inspector General as set forth in statute or title 18 of the Official Compilation of Codes, Rules and Regulation of New York State and other publications of the Department, including eMedNY Provider Manuals and other official bulletins of the Department.

**I UNDERSTAND THAT MY SIGNATURE HEREON THE ABOVE CERTIFICATION WILL APPLY TO ALL CLAIMS SUBMITTED ELECTRONICALLY OR ON PAPER, USING MY (OR THE ENTITY'S) NPI OR MEDICAID PROVIDER IDENTIFICATION NUMBER. THIS CERTIFICATION REMAINS IN EFFECT AND APPLIES TO ALL**

> **CLAIMS UNTIL SUPERSEDED BY ANOTHER PROPERLY EXECUTED CERTIFICATION STATEMENT** [upper case and bold in original].

Form EMEDNY-490601 (12/10) (emphasis in italics).

46. Certification Statements remain in effect and apply to all claims submitted to NYS Medicaid until superseded by another properly executed Certification Statement.

47. Dental providers are required to update their Certification Statement on an annual basis.

**Certified Dental Assistants**

48. Dental assistants perform a variety of support functions to aid dentists in the delivery of healthcare services, such as providing patient education and taking preliminary medical histories and vital signs to be reviewed by the dentist.

49. In New York, some dental assistants are licensed by the state and some are not.

50. Only those persons in New York who opt to become licensed "certified dental assistants" may perform specified healthcare services under the direct, personal supervision of a dentist involving physical contact with the inside of the patient's mouth ("intraoral care").

51. The specific requirements for licensure and scope of practice for certified dental assistants in New York are contained in Title 8, Article 133, Section 6608 of New York's Education Law ("Section 6608") and Part 61 of the Education Commissioner's Regulations.

52. Intraoral care that NY-licensed dental assistants can provide, but unlicensed dental assistants in New York cannot provide lawfully, include the following tasks:

a. placing and removing rubber dams,
b. selecting and prefitting provisional crowns,
c. selecting and prefitting orthodontic bands,

d. removing orthodontic arch wires and ligature ties,
e. placing and removing matrix bands,
f. taking impressions for study casts or diagnostic casts,
g. removing periodontal dressings, and
h. such other dental supportive services authorized by the dentist consistent with regulations promulgated by the Commissioner of Education.

N.Y. Education Law, § 6608-a.

## FACTUAL ALLEGATIONS *QUI TAM* CLAIMS

53. The NYS FCA Medicaid *qui tam* claims at issue in this action arise under the NYS Medicaid program and its laws and regulations.

54. At all times relevant to this complaint, Defendants provided orthodontal healthcare services to Medicaid beneficiaries.

55. At all times relevant to this complaint, Defendants submitted claims for reimbursement to NYS Medicaid for orthodontal healthcare services.

56. At all times relevant to this complaint, Defendants submitted claims to NYS Medicaid either electronically or in paper format.

57. At all times relevant to this complaint, NYS Medicaid reimbursed Defendants for orthodontal healthcare services after receiving claims submitted by Defendants or their agents.

58. From as early as in or about 2012 and continuing through the filing of this complaint, Defendants employed and used unlicensed dental assistants to provide intraoral healthcare services to Medicaid beneficiaries.

59. From as early as in or about 2012 and continuing through the filing of this complaint, Defendants, filed claims with NYS Medicaid expressly certifying, in effect, that Defendants did not use unlicensed dental assistants to provide intraoral healthcare services to

Medicaid patients, when, in fact, Defendants did use unlicensed dental assistants to provide such services.

60. The unlicensed dental assistants that Defendants employed and used to provide intraoral healthcare services to Medicaid beneficiaries at some point in time between 2012 and the present included, but are not limited to, the following persons:

Jasmine Lopez

Gheslaine Gonzalez

Diana Pichardo

Claudia (last name unknown, “lnu”)

Ysenia lnu

Thalia lnu

Radelyn lnu

Kim lnu

Vicmelys lnu (possibly, Cordero)

Marina lnu

61. Defendants' violations of the NYS FCA were “knowing,” within the meaning of the Act. Among other things, during his employment with Defendants Relator repeatedly communicated orally and in emails warnings to Defendant Bailey about the improper use of unlicensed dental assistants for Medicaid patients.

62. Defendants’ use of unlicensed dental assistants was material to payment decisions made within NYS Medicaid. Such materiality may be inferred from, among other things, the New

York Attorney General's announcement in January 2019 of a $9 million false claims settlement with an entity known as "Diamond Braces," for engaging in exactly the same conduct alleged in this complaint.

**FACTUAL ALLEGATIONS RETALIATION CLAIM**

63. Defendants hired Relator in August 2019, causing him to relocate to the New York City metropolitan area.

64. Between August and November 2019, Relator repeatedly warned Defendant Bailey orally and in emails that it was improper to use unlicensed dental assistants to provide intraoral healthcare to their Medicaid patients and that doing so violated New York Medicaid billing requirements and regulations.

65. Defendants abruptly terminated Relator's employment on or about November 6, 2019 without cause.

66. Defendants terminated solely because he had investigated, complained about and tried to stop Defendants from using unlicensed dental assistants to provide intraoral healthcare to their Medicaid patients.

**FIRST CAUSE OF ACTION**
**Violations of FCA Anti-Fraud Provisions**
**31 U.S.C. § 3729(a)(1)(A)**

67. Relator repeats and realleges the forgoing allegations.

68. From at least 2012 to the present, Defendants engaged in a continuous practice of:

knowingly presenting and causing to be presented false claims for payment approval, that is, submitting invoices to Medicaid for services rendered by unlicensed dental assistants, in violation of 31 U.S.C. § 3739(a)(1)(A).

69. As a result of the foregoing, the United States, State of New York and City of New York suffered economic damages and losses.

70. Defendants are jointly and severally liable under the FCA for three times the amount of such losses plus statutory civil penalties for each false claim, in aggregate amounts to be determined at trial.

**SECOND CAUSE OF ACTION**
**Violations of the FCA Anti-Retaliation Provisions**
**31 U.S.C. § 3730(h)**

71. Relator repeats and realleges the forgoing allegations.

72. During his employment by Defendants, Relator engaged in conduct protected under the FCA.

73. Defendants were well-aware that Relator was engaged in such protected conduct.

74. On or about November 6, 2019, Defendants terminated Relator's employment for having engaged in lawful conduct protected under the FCA.

75. Relator has suffered economic losses and other injuries and damages as a result of Defendants' wrongful conduct.

**PRAYER FOR RELIEF**

**WHEREFOR**, Relator, on his own behalf and on behalf, and in the name, of the United States, State of New York and City of New York, demands judgment against Defendants as follows:

**First Cause of Action**

A. Ordering Defendants to cease and desist from violating the FCA, 31 U.S.C. § 3729(a)(1)(A);

B. Awarding the United States, State of New York and City of New York three times the amount of damages sustained because of Defendants' violations of the FCA, plus a civil penalty for each of Defendants' violations of the Act, as provided by § 3729(a).

C. Awarding Relator the maximum amount available under the FCA for bringing the *qui tam* claims this action, namely, 25 percent of the proceeds of the Q*ui Tam* Claims in this action by judgment or settlement of the claim if the government intervenes; or, alternatively, 30 percent of the proceeds of the *Qui Tam* Claims by judgment or settlement of the claim, if the government elects to not intervene, as provided by 31 U.S.C. § 3730(d);

D. Awarding Relator all reasonable expenses that were necessarily incurred in prosecution of the *qui tam* allegations in this complaint, plus all reasonable attorneys' fees and costs, as provided by 31 U.S.C. § 3730(d). And,

E. For such other relief for the United States, State of New York, City of New York, and the Relator as this Court deems appropriate.

**Second Cause of Action**

A. Awarding Relator all relief to which he is entitled under 31 U.S.C. § 3730(h), including, reinstatement, lost wages, incidental and consequential damages and reasonable attorneys' fees, expenses and costs. And,

B. For such other relief for the Relator as this Court deems appropriate.

Dated: New York, New York
August 25, 2023

McINNIS LAW

By: ______________________
Timothy J. McInnis, Esq. [TM 7151]
NYS Bar No. 2205086
521 Fifth Avenue, 17th Floor
New York, New York 10175-0038
Telephone: (212) 292-4573
Facsimile: (212) 292-4574
Email: tmcinnis@mcinnis-law.com

*Attorneys for Relator*